Your Honor, in the last case, this morning's call is 217-0337, Peopleton State of Illinois v. Luis Eduardo Anaya. On behalf of the appellant, Mr. Jared Iquanua. On behalf of the appellant, Mr. Stephen A. Robbins. Thank you. Mr. Miller. Good morning, Your Honors. May it please the Court, my name is Darren Miller and I'm with the Appellate Defender and I represent Luis Anaya in this matter. Your Honor, Mr. Anaya stands convicted of first degree murder in the shooting death of Brandon Wright. He was sentenced essentially to a life sentence of 50 years and 25 for murder and 25 add on for personally discharging a firearm. Of crucial importance to the state's case here is the testimony of Mr. Rodriguez and Mr. Ramirez who were two people who were admittedly in the vehicle from which the shots were fired that killed Mr. Wright. The issue on appeal here is whether Mr. Anaya's counsel was ineffective for failing to seek the jury to be instructed with IPI 3.17 regarding the countless testimony. And essentially that instruction tells the jury to consider the testimony of Ramirez and Rodriguez with suspicion and caution. As Your Honors know, for ineffective assistance of counsel, it's a two-pronged test. First, it has to be established that counsel's decision not to seek that instruction was objectively unreasonable and that the defendant was prejudiced. Does the instruction actually fit here? I mean, did either witness say that they were involved in the commission of a crime with the defendant? That's a really good question, Your Honor. It's something I stumbled upon as I was preparing for this. If you look at the main instruction, 3.17, it says when a witness says he was involved in the commission of a crime. But then if you look at the committee notes, subsection 2, it says if the witness admits to being present at the scene of the crime and could have been indicted as either principled or under a theory of accountability but denies involvement. So I think the crucial importance here is that the jury be instructed to consider the testimony with suspicion and caution. It does appear that that main part of the instruction probably should be modified to reflect subsection 2 in the committee note. But it wasn't, was it? I'm sorry. No, there was no instruction. I'm sorry. Obviously, there was none given. Yes. But there was an instruction given, was there not, to the jury that they are the judges of the credibility of the witnesses, in other words, the standard IPI objection? Sure. I'm sorry, instruction. Right. So given that that was given and that this really, certainly the standard IPI for accomplice testimony really didn't fit, I mean, why is this, was this ineffective assistance if indeed it wouldn't fit? Well, that standard instruction just says that you're the judge of the credibility. Whereas this says to judge the testimony with caution. For example, if my child, another child had an argument and one said the other one was lying and I was having to judge their credibility. If someone said, well, it's up to you to judge their credibility, fine, as opposed to, well, you're Susie, you've got to judge her with caution because she's suspicious. Those are two totally different things, especially here where the testimony of Rodriguez and Ramirez is crucial to the state's case. They were the only witnesses to claim that not only the defendant fired the shots, but the defendant was actually in the car at the time the shots were fired. I can certainly see your argument as it relates to Rodriguez, but how does it fly with Ramirez? I mean, Ramirez, he's just there. Well, I think what this Court really has to look at is just like in a state's case when they're presenting evidence, you have to look at the circumstantial evidence, the reasonable inferences, whether they've established consciousness of guilt by their actions. For example, Ramirez had a motive. His friend, they were both friends with Mr. Anaya and Mr. Rodriguez. Anaya had been hit in a fight with the person they were trying to go after. Mr. Rodriguez's car was damaged when that person punched the car. So although his motive probably wouldn't be as strong as Rodriguez's, he still does have a motive that his friends were both beaten up and had their car damaged by that incident. Circumstantial evidence, they went from the bar to the McDonald's parking lot. And by the state's theory, apparently they played musical chairs because at the bar, the witnesses had Mr. Anaya in the back seat, but according to Ramirez and Rodriguez, for some reason, he went to the front seat. And the motive for the defendant isn't really there. In other words, if the defendant's motive was to retaliate for this fight, there'd be no reason to leave the parking lot in the first place. It makes a lot more sense that the motive developed after Rodriguez's car was damaged. And then they pulled over at the McDonald's. He saw the damage and waited. So, fine, it's perfectly reasonable, I think, that all of them were discussing the damage, going after them, laying in wait, so to speak, for them to leave the lot. And so there's strong circumstantial evidence that Ramirez knew what he was getting into when he got into that car at the McDonald's parking lot. He actually denies that the car went to the parking lot. He gave three different stories to the police, which is indicative of a consciousness of guilt. At first he said that he wasn't at the bar, and then I believe he said that he was either picked up at the bar, or I think his girlfriend said that they said he was picked up at McDonald's. So what's his role in the commission of the offense, Ramirez? What's his role? I mean, in Harris we talked about that there was nothing to show that the witness had any role in the commission of the offense. But what was Ramirez's role in the commission of the offense? He wasn't the driver. Nobody puts him in the driver's seat. But that's what you're doing is you're assuming, you're taking what the, for lack of better words, co-defendants, or their version is true. We don't know what was going on in that car. And under the law, for accountability can be proven by circumstantial evidence, and there's five factors that can be considered. Was the witness present during the offense? Yes, Ramirez was present during the offense. Did he have a close affiliation with the companions after the crime? I mean, there's not a whole lot of that, but he did, he claims that he actually drove Mr. Anaya back home from Rodriguez's house, which would not be the actions of an innocent person who had nothing to do with this incident, at least as an accomplice. He failed to report the crime to the police. He fled the scene, and he voluntarily attached himself to a group bent on an illegal act, which designed of its knowledge, and there's strong circumstantial evidence of that, and considered in conjunction with the various versions that he gave to the police, which is indicative of a consciousness of guilt. That is how Ramirez. So you think there's more than presence? It's different than Harris? Oh, certainly. There's much more than mere presence. What about the prejudice aspect, prejudice prong here? The defendant has to establish a reasonable probability that but for counsel's errors that the results of the proceedings would have been different, and so we have to look at the strength of the testimony apart from the accomplice testimony, and there were some independent witnesses, were there not? Well, it depends on what you're referring to. There were independent witnesses that the shooting did occur, that it occurred out of Rodriguez's car. There were independent witnesses at the bar that said the three of them left together in that car, but here they didn't just leave from there and go after someone. Here they stopped at the McDonald's, all got out, and were discussing the damage to the car. Well, there's an independent witness that the car that the shafts came from was southbound just like the victim's car, whereas the theory is that Rodriguez shot out the driver's side window going northbound. Right, but we have no idea who was sitting where. That's totally contingent on the version that Ramirez and Rodriguez give. So that's why it's so important to let the jury know that, hey, you begin with our testimony in suspicion and caution rather than however they chose to believe it. Well, where does speculation end and evidence begin? I mean, how far do we take speculation to prove probable cause if these people are accountable? I mean, you're speculating that we don't know where they were sitting in the car. Maybe Anaya was driving or Anaya was in the back seat, but Rodriguez and Ramirez both testified to where everybody was. There's no other evidence in the record as to where everybody was. Yeah, but if the jury would have opted, if they would have been instructed in accordance with 3.17 to view their testimony with suspicion and caution, it could have been up to the jury to completely disregard their testimony. And if their testimony had been disregarded by the jury, the State really has nothing except for flight. But wasn't their testimony, again, I realize that the word suspicion wasn't used in the instructions. The jury was not instructed on looking at their testimony with suspicion. But weren't they substantially cross-examined, their credibility was argued to the jury, and the general, as Justice Zinoff said, the general instruction on credibility was given, which we have case law, you know, Love and Lewis, that support the proposition that that's enough. Well, I don't think the case law is that. I think the case law is that in and of itself is not enough, that just the general credibility instruction doesn't make everything all right. And I forget the name of the case, but one case that there would be no point of 3.17 at all if that were the case, why ever give it? And again, like I believe I said earlier, I think there's a difference between telling the jury, you are the judgment, the credibility of the witnesses. It's up to you to decide who's telling the truth and to tell them, by the way, view their testimony with suspicion and caution. And, yeah, defense counsel can argue that they're liars, but it's different when the court is telling them, as a matter of law, you have to view this testimony with suspicion and caution. I'm not sure if I have it. On the issue of the comment in closing regarding flight, how is saying something is as good as, how does that mean actual? It really doesn't, even in the words themselves and the literal meaning and how people understand it. Well, he didn't say it was actually a confession. No, he said it's good as, meaning it's not actually a confession.  It's just like, hey, this is just like that. When he fled, that's just as good as confessing. He's so guilty that only a guilty person, that's just like having confessed. And I think that overstates the law and overstates the value that's put on flight, given, I believe it's IPI 3.03. You're not supposed to instruct, but, yeah, it can be understood. You can argue it's consciousness of guilt. Correct. Correct. But this was an isolated single phrase. Right. And I don't, if that were the only error here, I don't think I would have even raised it. But I think when you put that in the perspective of what occurred here with not, with basically the court, for lack of a better word, bolstering the credibility of Ramirez and Rodriguez by not telling the jury to view their testimony with suspicion, and then by overemphasizing, the state overemphasizing the value of evidence of flight, that could lead a reasonable jury to come to the conclusion of guilt when it otherwise might not have come to that conclusion. If there are no other questions, I think I've touched upon all my points. Okay. You'll have time under a bottle. Thank you. Mr. Rogers. Good morning. Good morning, Your Honors. Counsel, may it please the Court. My name is Stephen Rogers, and I represent the people of the state of Illinois. Your Honors, I'll start with the ineffective assistance as it pertains to the failure to request IPI 3.17 and whether trial counsel was objectively unreasonable in failing to request the instruction. And I take the point that the instruction says, when a witness says he was involved in the commission of a crime with the defendant, and even if the committee notes say, and I agree, the case law says that a witness can deny, and that's not dispositive. But that's still the instruction. The jury doesn't get the committee notes. So if the jury is sitting there saying, did either of these witnesses say they were involved, that they were a part of this crime, the answer would be no. And so the jury could still disregard and not treat their testimony with caution and suspicion. So neither witness testified that they were a part of the commission of the crime. Both testified that they were surprised by defendant's actions. And neither witness inculpated the other. There was no third-party testimony or statement by defendant that incriminated either witness additionally. And so really what we're left with is what I would consider speculation. What are the possibilities? They're there. They could have been driving. They could have encouraged, but there's no evidence that that occurred. Well, I mean, if we're looking at the totality of the evidence, isn't there a pretty good argument that there's probable cause to believe that Rodriguez was involved either as a principal or an accomplice? I mean, he owned a .40-caliber gun. He drove away from the opposite direction from where everybody was living at the request of apparently the defendant to follow the victim's car after this altercation, after his new car had been damaged. He doesn't go to the police until after the defendant flees the country. And then, of course, we have this forensics evidence that's argued that he was shooting from a different direction where the shell casings were found. So, I mean, isn't there, taking all that evidence together, at least probable cause to believe he's at least accountable? Your Honor, I would agree there's minimal evidence for Rodriguez. I don't know if it's debatable whether that reaches probable cause. There was evidence he bought the firearm, a Glock, a little over a year prior to the shooting. His testimony that it was sold prior to the shooting. The firearm was never recovered. And the only evidence that that would have been his firearm was apparently Ramirez in front of the grand jury said, kind of, I thought it was his firearm just because I knew he had had one, and I didn't know that the defendant had one. You said you thought there might be minimal evidence for Rodriguez, but the standard for probable cause is a pretty low one, is it not? I mean, I think lower than a preponderance, so. It's a low standard, Your Honor, but I still think, you know, and Rodriguez is, he continues going straight, so all these individuals are turning. And Rodriguez keeps going, which indicates that he was attempting to abandon pursuit. But I do agree there's minimal evidence. There's some evidence that Rodriguez, as the driver of the vehicle and as his vehicle was just struck, could have, there's some evidence that he was, participated. But there's really zero evidence that Ramirez participated, and that really gets to the prejudice analysis. Even if the trier of fact was going to discount Rodriguez's testimony to some extent, you still have Ramirez who corroborates Rodriguez on all major points. And I think we have to keep in mind that defendant was the link between Rodriguez and Ramirez. Ramirez, by the time of trial, was married to defendant's first cousin. They had seen each other once or twice a week, and Ramirez described the family as close-knit. So for someone with such little involvement, it's hard to believe that he would pin the blame on defendant if Rodriguez, under the defense theory of the case, if Rodriguez had been the actual shooter, and they had somehow went down, made the U-turn, and Rodriguez was able to shoot back at the turning vehicles. So if I understand your argument correctly, you're saying that even if counsel had tendered the instruction, it might have been given with respect to Rodriguez, but then there's Ramirez, whose testimony would not have fit under the accomplice instruction. So there just couldn't be prejudice? Yes, Your Honor. Is that basically your argument? Yes, Your Honor. Even had the instruction been given, I don't think the jury would have discounted Ramirez's testimony, and his testimony corroborates Rodriguez's testimony. Maybe I misspoke. My point is that if counsel had tendered the instruction, your position is that it really didn't apply to Ramirez at all. Yes, Your Honor. That if it had been tendered at best for the defendant's position, it might have been given with respect to the testimony of Rodriguez. Yes, Your Honor. I don't want to put words in your mouth, but is that the gist of what you're saying? Well, Your Honor, looking at the instruction, I don't know if any of the cases have distinguished. You know, you say this instruction applies to Rodriguez, but don't apply it to Ramirez. No, I mean, that's what I'm gleaning that that's what you're saying is, look, Ramirez was really a step away. Arguably, there's more indication that Rodriguez was involved in the crime, even though you didn't say it, was involved, far less for Ramirez. So even if counsel had tendered the instruction that a trial judge, in the exercise of its discretion in giving full and fair instructions, would likely not have given it with Ramirez. Yes, Your Honor. And, of course, it was not tendered, so it's hard to figure out if they would have likely given it. I know. I appreciate that, but we still have to find the prejudice. And so my question is, is there a basis to have given, if it had been tendered, for the court to have given it with respect to Ramirez, as opposed to Rodriguez? No, Your Honor. I don't believe there's any basis to give IPI 3.17 as it pertained to Ramirez. I don't believe there was probable cause to believe that he was part of the planning or commission of the offense. And that, therefore, his testimony comes in without caution, so to speak. Yes, Your Honor. And it corroborates, and that's what happened in McAllister. There were four individuals in a vehicle. There's the defendant and one accomplice witness who enters the victim's trailer. There are two other individuals in the vehicle, and they actually go pick up a firearm on their way to the trailer. And the Supreme Court, in their analysis, says, well, you have these two independent individuals that stayed in the vehicle, and they confirmed the pacing of the gunshots. You hear, say, three right off the bat, there's a pause, then two more. And that corroborated the accomplice witness's testimony, who was inside. And so I do believe, especially in a prejudice analysis, I'm not sure exactly how it would work tendering the instruction, you know, apply it to one, don't apply it to the other. But when you're looking at it from a prejudice perspective, I think you can separate out what individuals were accomplices and which were not. The other things the Supreme Court has said, as Your Honor has touched on, is the believability of witnesses. And this jury was instructed to consider any bias, interest, or motive of the witnesses testifying. There were extensive attacks on the credibility of witnesses. As Rodriguez drove the vehicle, it was his fiancée's brand-new vehicle that was damaged, and the fact that he had, a year prior, bought the firearm. And then Ramirez made inconsistent statements, and those were all laid out pretty much in full force to the jury. And finally, the counsel's arguments. That has also been considered by courts. And trial counsel extensively attacked the motives and biases of both witnesses, expressly invoking IPI 1.02, the believability of witnesses, during the closing argument. And the State recognized that both individuals afterward were trying to protect themselves because they got caught up in a bad situation. And so with all of those factors present, it's the State's position that there was no prejudice in this case. And on the second issue, the closing argument, the State disagrees that either prong was met. It would not have been reversible error had trial counsel preserved and made an objection to that statement because it is that argument, after all. And the State is free to argue the strength of its evidence. And there was no mischaracterization. At worst, you could call it overemphasis, but that's only if you believe that the evidence was weak in itself. But the State's position was that when defendants' family members had not seen him from the night prior until the time of trial, that's pretty strong evidence of consciousness of guilt. And so without any reversible error, there could not have been prejudice in this case. And if there are no further questions... Do you have anything for me? Thank you. The State respectfully requests that this Court affirm the defendants' convictions. Thank you. Mr. Miller? Your Honor, Ramirez is a liar. I don't think there's any dispute about that. It's been established he gave three different urges. It doesn't make him an accomplice. I'm sorry? Being a liar does not make you an accomplice. Well, it does demonstrate consciousness of guilt. And if you look at Mr. Ramirez and if you apply the standard in In Re To, opposing counsel says there's no evidence of accountability. But In Re To sets out the factors for accountability. And it says it can be proven by circumstantial evidence, which would include consciousness of guilt and lies. And it sets out factors. Was he present? Yes, he was present at the shooting. He admits it. Did he have a close affiliation? He claims he drove the defendant home from Rodriguez's house. Did he fail to report the crime? Yeah, he not only failed to report the crime, he gave three different versions to the police, at least two of which in our contention was all three of which were lies. Did he flee from the scene? Yes. Did he voluntarily attach himself to a group bent on an illegal act? I think the circumstantial evidence is clearly he did. And he has this bizarre version of facts. He said there's this shooting going on and discussion. And according to Rodriguez, he's yelling at the defendant. But Ramirez is just in the back just enjoying his music. That's completely incredible. He said he didn't hear any conversation before or after. I don't think any rational trier of fact could say, oh, yeah, Mr. Ramirez comes off as credible. So point number one is absolutely the accountability instruction should come in for both Rodriguez and Ramirez. But even if it weren't to come in for Ramirez, what would you be left with? Well, you'd be left with Rodriguez. The court's still telling the jury to consider his testimony with caution and suspicion. And the jury would be like, well, what corroborates his testimony? Oh, the liar Ramirez. He corroborates. The guy who's basically told lies every time he's talked about this case. And so even if the jury were only instructed regarding Rodriguez, there's still a reasonable probability that the result of this trial could have been different, that a rational jury could have come to a different conclusion. If there are no other questions, I would ask that you reverse and remember to try. Thank you. Thank you very much. Thank you, counsel, for your arguments this morning. The court will take the matter under advisement. We'll render a decision in due course. The court stands in recess for the day. Thank you.